# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

MINDY V.,[1]

    Plaintiff,

vs.

FRANK BISIGNANO,[2]
Commissioner of Social Security,

    Defendant.

No. 24-CV-4029-CJW-KEM

**REPORT AND RECOMMENDATION**

---

Plaintiff Mindy V. seeks judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff argues that the administrative law judge (ALJ) committed several errors: (1) the ALJ's RFC did not limit Plaintiff's overhead reaching, making the RFC unsupported by the medical opinions the ALJ found persuasive; (2) the ALJ did not address a statement by Plaintiff's treating doctor; (3) by limiting Plaintiff's ability to push and pull on the left to occasionally, the ALJ created an unresolved conflict with the Dictionary of Occupational Titles (DOT) and the ability to perform light work; and (4) the ALJ did not develop the opinion evidence or address Plaintiff's breathing issues, sleep apnea, and obesity. I recommend **reversing** the ALJ's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Frank Bisignano is substituted for his predecessor in accordance with Federal Rule of Civil Procedure 25(d).

## I. BACKGROUND

Plaintiff has worked at several jobs over the years, all medium work. AR 56-57, 178, 214. In July 2016, she fractured her ribs in a car accident; and, in November 2019, she re-aggravated the injury in a second car accident and learned her rib fractures had never fully healed. AR 499, 502, 504, 519, 566. In January 2021, she received a new assignment at work that involved working on an assembly line with heavy lifting and "more shoulder abduction[] and wider chest wall movements." AR 350, 394, 578-79, 658-59. This work exacerbated her old rib fractures. *Id*. Her employer refused to accommodate her doctor's restrictions to light work, and she ultimately last worked on January 29, 2021. AR 658-59. She underwent surgery on her ribs on June 30, 2021. AR 589-90.

Plaintiff filed the current application for DI benefits on December 2, 2021, alleging disability since January 29, 2021, based on "titanium ribs on left side causing pain" and high blood pressure. AR 67. The Social Security Administration denied Plaintiff's request for benefits on initial review in April 2022 and on reconsideration in July 2022. AR 66-80. As part of those reviews, state agency medical consultants Donald Shumate, DO, and Rene Staudacher, DO, provided medical opinions on Plaintiff's RFC. AR 69-71, 76-78.

Plaintiff requested further review. At the same time, Plaintiff pursued a workers' compensation claim. As part of the workers' compensation proceedings, Plaintiff underwent two functional capacity evaluations in April 2023, with physical therapist Neal Wachholtz and Sunil Bansal, MD. AR 627-33, 641-63. Each issued opinions as to Plaintiff's functional abilities. *Id*.

The ALJ held a hearing in July 2023, at which Plaintiff and a vocational expert (VE) testified. AR 29-30. The ALJ issued a written opinion on August 30, 2023,

2

following the five-step process outlined in the regulations[3] to determine whether Plaintiff was disabled during the relevant time period. AR 14-23. The ALJ found Plaintiff suffered from the severe impairments of neuralgia and "non-union of rib fractures, status post thoracotomy." AR 16. The ALJ did not discuss any other potential impairments (such as sleep apnea or obesity). *Id*. To aid in steps four and five, the ALJ determined Plaintiff's residual functional capacity (RFC),[4] finding Plaintiff could perform light work with the following limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk about 6 hours in an 8-hour workday and can sit about 6 hours. Push/pull activities on the left are limited to occasional. She would need to alternate between sitting and standing but could remain at the workstation when doing so. She can frequently climb ramps and stairs but never ladders, ropes, or scaffolds. She can occasionally stoop and frequently kneel, crouch, and crawl.

AR 17. The ALJ relied on VE testimony and found a significant number of jobs existed in the national economy Plaintiff could perform, including cashier II, small products assembler, and laundry folder. AR 11. Thus, the ALJ found Plaintiff not disabled from January 29, 2021, through August 30, 2023, the date of the decision. AR 22-23.

The Appeals Council denied Plaintiff's request for review on April 15, 2024 (AR 1-6), making the ALJ's decision that Plaintiff was not disabled the final decision of the

---

[3] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* § **404.1520(a)(4)**. The claimant bears the burden of persuasion to prove disability. *Goff*, 421 F.3d at 790.

[4] RFC means "the most that a claimant can do despite her limitations." *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019).

Commissioner.[5] Plaintiff filed a timely complaint in this court (Doc. 1).[6] The parties briefed the issues (Docs. 6, 10, 13) and the Honorable C.J. Williams, Chief District Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[7] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[8] The court "do[es] not reweigh the evidence or review the factual record de novo."[9] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[10]

### A. *Some Medical Evidence*

The ALJ's RFC determination must be supported by at least some medical evidence from a medical professional that "addresses the claimant's ability to function in the workplace."[11] Plaintiff argues that the ALJ improperly substituted his lay opinion for that of the medical professionals because doctors agreed Plaintiff suffered limitations in

---

[5] *See* **20 C.F.R. § 404.981**.

[6] *See* **20 C.F.R. § 422.210(c)**.

[7] *Grindley*, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

[8] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

[9] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

[10] *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

[11] *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (quoting *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001)).

4

overhead reaching, but the ALJ did not limit Plaintiff's ability to overhead reach in his RFC.

The ALJ's failure to limit overhead reaching in the RFC appears to have been a scrivener's error. Plaintiff correctly points out that all the medical opinions include such a limitation: the state agency medical consultants both limited bilateral overhead reaching to occasionally due to Plaintiff's chronic chest wall pain aggravated by reaching; and the consultative examiners from the workers' compensation proceedings both limited Plaintiff's overhead lifting "to an occasional basis with 10 pounds or less." AR 70, 77, 627, 663. The ALJ found three of these opinions persuasive. AR 19-20. An ALJ may not decline to adopt a limitation from a persuasive medical opinion without explanation.[12] But it seems the ALJ intended for the RFC to include a limitation on overhead reaching, since he included such a limitation in the hypotheticals to the VE. *See* AR 57-60.

Here, the ALJ's first hypothetical to the VE asked about a person with all the same limitations as Plaintiff, except the need to alternate sitting and standing, and with the addition of "[o]verhead reach bilaterally . . . limited to occasional." AR 57. The VE identified three jobs such a person could perform, the cashier II job and two others. AR 57-58. Next, the ALJ asked whether these jobs would "allow for a sit/stand option as long as the person could remain at or near the workstation"? AR 58. The VE stated only the cashier II job. The ALJ asked if there would "be other examples of jobs with sit/stand options within the hypothetical?" *Id*. The VE identified the small products assembler job and the laundry folder job. AR 58-59. Ultimately, at step five, the ALJ found Plaintiff could work the jobs identified in response to the second hypothetical (cashier II, small products assembler, and laundry folder). AR 22. The VE testimony supports that claimant could still perform the jobs identified by the ALJ, even with the

---

[12] *See Dowden v. Saul*, No. 19-CV-2054-KEM, 2020 WL 6470180, at *7 (N.D. Iowa Nov. 3, 2020).

overhead reaching limitation (since it was included in the hypothetical to the VE). Thus, I agree with the Commissioner that any error in failing to include an overhead reaching limitation in the RFC was harmless.[13]

Plaintiff argues that if the ALJ had limited overhead reaching to occasionally in the RFC, then there would have been an unresolved conflict with the DOT. "VE testimony that conflicts with the DOT 'does not constitute substantial evidence upon which the Commissioner may rely to'" prove jobs exist at step five if the inconsistency is unexplained by the VE.[14]

> Under Social Security Ruling (SSR) 00-4p, the ALJ must "ask about any possible conflict" between VE evidence and "information provided in the DOT." . . . If there is an "apparent unresolved conflict" between VE testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given by the [VE] provides a basis for relying on the VE testimony rather than on the DOT information."[15]

The Eighth Circuit has held that an RFC limitation to occasional overhead reaching creates an apparent conflict with jobs described by the DOT as requiring constant or frequent[16] reaching (without "specif[ying] the direction of reaching").[17] The DOT describes the cashier II, small products assembler, and laundry folder jobs as all requiring

---

[13] *See **Byes v. Astrue***, 687 F.3d 913, 917 (8th Cir. 2012) (declining to reverse an ALJ's decision when "[e]ven if the ALJ had not erred, there [was] no indication that the ALJ would have decided differently").

[14] ***Moore v. Colvin***, 769 F.3d 987, 990 (8th Cir. 2014) (quoting ***Kemp ex rel. Kemp v. Colvin***, 743 F.3d 630, 632 (8th Cir. 2014)).

[15] *Id.* at 989-90 (cleaned up) (quoting **SSR 00-4p**, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000)).

[16] Occasionally is a term of art meaning "very little up to one-third" (or two hours) of an eight-hour workday. *See, e.g.*, **DOT, App. C**; **SSR 96-9p**, 61 Fed. Reg. 34478, 34480 (July 2, 1996). Frequently means one-third to two-thirds (or six hours) of an eight-hour day. *See, e.g.*, **DOT, App. C**; **SSR 83-10**, 1983-1991 Soc. Sec. Rep. 24, at 29-30 (CCH Jan. 1, 1983).

[17] *Moore*, 769 F.3d at 989-90; *Kemp*, 743 F.3d at 633.

6

frequent reaching.[18]

Here, the VE acknowledged and explained the conflict. At the conclusion of the VE's testimony, the ALJ asked if his testimony was consistent with the DOT. AR 63. The VE stated:

> [O]verhead reach is something that isn't clearly defined in the DOT. They just define reaching as reaching in all directions. So again, unless you're doing an electrician or something like that, all jobs to a certain degree might— . . . well, I shouldn't say all jobs. But any job, at least at times, you might have to get up, get something out of a cupboard, reach up. But most jobs at the light and sedentary level, . . . the reaching is going to be done with the hands out in front of the body. You're not going to be reaching overhead.

AR 63-64. Plaintiff argues this explanation is insufficient, because the VE did not specifically explain how each identified position would not require more than occasional overhead reaching. Plaintiff's cited cases do not support that a job-by-job description is necessary.[19] Here, the VE acknowledged the specific conflict (with overhead reaching); noted the DOT does not distinguish between overhead reaching and other kinds of reaching; and explained that most light and sedentary jobs require reaching in front of the body, not overhead. Combined with the VE's earlier testimony that a hypothetical

---

[18] **DOT §§ 211.462-010, 369.687-018, 706.684-022**.

[19] *Aitchison v. Comm'r of Soc. Sec. Admin.*, No. 4:23-CV-00602, 2024 WL 580882, at *5 (E.D. Ark. Feb. 13, 2024) (noting that when "an ALJ does not even recognize a conflict, or the VE simply relies on experience in general," the conflict has not been resolved; but finding no error when "[t]he ALJ recognized this potential conflict in reaching capacity and asked the VE about it," the VE "addressed the conflict and said that the jobs would be possible for [claimant] based on her experience in job placement," and the ALJ "discussed the resolution of the conflict in her decision"), *report and recommendation adopted*, 2024 WL 3825266 (Aug. 14, 2024); *Rowland v. Kijakazi*, No. 4:21-CV-00660, 2022 WL 993810, at *2-3 (E.D. Ark. Apr. 1, 2022) (noting that a reaching conflict is unresolved when the VE does "not address the conflict or g[ives] a one-word response," but finding no error when "the ALJ and VE discussed the fact that . . . 'the DOT does not explain directional reaching[,]' [t]he VE testified that she was familiar with how the work was performed and that overhead reaching was possible in the [identified] job . . . . based on her personal experience and knowledge of how these jobs are performed," and the ALJ "discussed the testimony in his decision" (cleaned up)).

person with an overhead reaching limitation could work as a cashier II, small products assembler, and laundry folder, the VE's testimony supports that these jobs would not require frequent *overhead* reaching, despite requiring "frequent reaching" per the DOT. Thus, the VE's testimony resolved any conflict with the DOT involving overhead reaching.[20]

I recommend finding that any error by the ALJ in failing to limit Plaintiff's RFC to occasional overhead reaching was harmless. The ALJ included the limitation in the hypothetical to the VE; the VE testifed Plaintiff could work the jobs ultimately found by the ALJ with an overhead reaching limitation; and the VE resolved the possible conflict with the DOT, which states these jobs require frequent reaching.

### B. Failure to Address Treating-Source Statement

For claims filed after March 2017 (like Plaintiff's), the ALJ must "evaluate the persuasiveness of medical opinions" by considering certain factors and "explain how [the ALJ] considered the supportability and consistency factors."[21] Plaintiff argues that the ALJ erred by failing to discuss the opinion of Dustin Sorenson, MD, her treating pain doctor.

Dr. Sorenson spoke with an attorney for Plaintiff, the attorney summarized his statements in writing, and then Dr. Sorenson checked boxes indicating whether he agreed or disagreed with the summary with space to comment. AR 638-40. Dr. Sorenson described Plaintiff's symptoms and the treatments he had prescribed. *Id.* He indicated

---

[20] *See Soltis v. Colvin*, No. 14-cv-574, 2015 WL 58793, at *3, *6 (D. Minn. Jan. 5, 2015) (holding that adequate explanation existed for potential DOT conflict between RFC limiting claimant's overhead reaching and DOT descriptions requiring frequent or constant reaching when the ALJ asked whether the DOT "break[s] down . . . overhead reaching as opposed to extended reach," the VE answered no, the ALJ asked the basis for the VE's opinion, and the VE said his "professional experience").

[21] **20 C.F.R. § 404.1520c**.

8

he could not provide an opinion on functional restrictions from a pain-management standpoint, since pain complaints are subjective in nature. *Id.* He stated he deferred to the opinions of Plaintiff's surgeon or otherwise recommended a functional capacity evaluation to address restrictions, which he would defer to. *Id.*

Plaintiff argues the ALJ erred by failing to address the supportability, consistency, and overall persuasiveness of this medical opinion. Plaintiff argues that Dr. Sorenson "endorse[d] the [functional capacity evaluation] opinions of [PT] Wachholtz," which was more limiting than the ALJ's RFC. Doc. 6. The Commissioner responds that Dr. Sorenson specifically declined to impose functional restrictions, and his statement therefore does not constitute a medical opinion the ALJ must discuss under the regulations.

I agree with the Commissioner. The regulations define a "medical opinion" as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.[22]

---

[22] **20 C.F.R. § 404.1513(a)(2)**.

Dr. Sorenson's statement contains no functional restrictions—in fact, he specifically declined to opine on this issue—and is therefore not a medical opinion. Dr. Sorenson indicated he would defer to any recommendations from a functional capacity examination, but it does not appear he received the results of any such examination or specifically adopted the restrictions therein. In addition, the ALJ discussed PT Wachholtz's findings, and Plaintiff does not challenge the ALJ's persuasiveness analysis. AR 20.

I recommend finding that the ALJ did not err in failing to address the persuasiveness of Dr. Sorenson's statement.

### C. Unresolved Conflict with the DOT

As noted in Part A, "[i]f there is an 'apparent unresolved conflict' between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given by the expert provides a basis for relying on the VE testimony rather than on the DOT information.'"[23] Here, the ALJ limited Plaintiff (in both the VE hypothetical and RFC) to only occasional "push/pull activities on the left." AR 17, 57. The VE opined that Plaintiff could perform the light work jobs ultimately found by the ALJ despite this restriction: cashier II, small products assembler, and laundry folder. AR 22, 58-59. Neither the VE nor ALJ acknowledged any conflict with the DOT regarding the claimant's push/pull limitation. Plaintiff argues this was error.

The regulations define light work as requiring "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[24] The definition contained in the DOT is a bit broader: light work requires "[e]xerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a

---

[23] *Moore*, 769 F.3d at 989-90 (quoting **SSR 00-4p**, 65 Fed. Reg. at 75760).
[24] **20 C.F.R. § 404.1567(b)**.

10

negligible amount of force constantly . . . to move objects."[25] The individual DOT descriptions for each of the three jobs identified by the VE and ALJ state they require light work and provide this DOT definition.[26] Plaintiff argues that the DOT requirement of exerting up to 10 pounds of force frequently (up to two-thirds of the time) creates an "apparent unresolved conflict" with the RFC limitation to pushing and pulling on the left only occasionally (up to one-third of the time).

The DOT defines "pushing" as "[e]xerting force upon an object so that the object moves away from the force (includes slapping, striking, kicking, and treadle actions)," and it defines "pulling" as "[e]xerting force upon an object so that the object moves toward the force (includes jerking)."[27] Because light work requires frequently exerting ten pounds of force, and pushing and pulling are a form of exerting force, Plaintiff argues there is a possible conflict.

Plaintiff relies on *Mercedez*, a case from the Western District of New York that is directly on point. In that case, the VE hypothetical and RFC found claimant could not "push/pull more than 10 pounds with the right upper extremity, and [could not] otherwise use the right upper extremity on more than an occasional basis."[28] The VE testified, and the ALJ found, that claimant could perform light work.[29] Based on the DOT definition of pushing, pulling, and light work, the court found an unexplained conflict between light work's requirement of occasionally exerting up to 20 pounds of force and claimant's limitation to pushing and pulling (exerting force) on no more than 10 pounds with her

---

[25] **DOT, App. C**.

[26] **DOT §§ 211.462-010, 369.687-018, 706.684-022**.

[27] **DOT, App. C**.

[28] *Mercedez M. H. v. Comm'r of Soc. Sec.*, No. 1:22-cv-0035, 2023 WL 5766099, at *1 (W.D.N.Y. Sept. 7, 2023).

[29] *Id.* at *3.

11

right arm.[30] The court also found claimant's limit to occasional use of her right arm conflicted with light work's requirement of frequently exerting up to 10 pounds of force.[31] Even though claimant's left arm was unaffected, the court found a conflict still existed, noting the Commissioner had to ask about "*any possible conflict*."[32] The court likened the conflict to one recognized by circuit courts involving overhead reaching: a limitation to occasional overhead reaching conflicts with a DOT requirement of frequent reaching, because the DOT defines reaching as extending the hands and arms in any direction and does not distinguish between overhead and other kinds of reaching.[33] Just as the DOT is silent as to the direction of reaching, "the DOT is silent on whether both hands are necessary" to exert force for light work.[34]

Other district courts have agreed that light work in the DOT requires frequently pushing and pulling up to ten pounds.[35] Like the court in *Mercedez*, these courts have

---

[30] *Id.* at *4.

[31] *Id.*

[32] *Id.* (quoting *Lockwood v. Comm'r*, 914 F.3d 87, 93 (2d Cir. 2019)); *accord Moore*, 769 F.3d at 989.

[33] *See also supra* note 17.

[34] *Mercedez*, 2023 WL 5766099, at *4 (quoting *Chavez-Fuentes v. Saul*, No. 18-cv-20765, 2020 WL 5646600, at *7 (S.D. Fla. Aug. 27, 2020*)*).

[35] *Harris v. Berryhill*, No. 17-cv-00819, 2018 WL 910527, at *4-5 (W.D. Wash. Jan. 12, 2018) (finding apparent conflict between RFC limitation to pushing and pulling less than 10 pounds with the left arm occasionally and DOT description of light work requiring exerting up to 10 pounds of force frequently, since "exerting force" included pushing and pulling), *report and recommendation adopted,* 2018 WL 884360 (Feb. 14, 2018); *Blair v. Comm'r, Soc. Sec. Admin.*, No. 19-cv-06010, 2020 WL 353234, at *3 (W.D. Ark. Jan. 21, 2020) (apparent conflict between RFC limitation to occasional pushing and pulling and DOT description of light work requiring exerting up to 10 pounds of force frequently); *Kawther Y. v. Kijakazi*, No. 21-cv-01191-BGS, 2023 WL 2766666, at *4-5 (S.D. Cal. Mar. 30, 2023) (same); *see also Gary J. v. Comm'r of Soc. Sec.,* No. 6:19-CV-1186, 2020 WL 2748024, at *8 & n.11 (N.D.N.Y. May 27, 2020) (holding that ALJ did not err in failing to include push/pull limitations in RFC, because by limiting claimant to light work, by definition, ALJ limited claimant to pushing or pulling no more than 20 pounds occasionally and 10 pounds frequently, since pushing and pulling were included in the description of exerting force for light work); *Collin v. Colvin*, No. 12-cv-336,

12

found that an apparent conflict exists between an RFC limitation to occasional pushing and pulling (whether with one arm or two) and the DOT's description of light work as requiring the ability to exert up to ten pounds of force frequently, since by definition, exerting force includes pushing and pulling.[36]

The Commissioner cites no cases that have held otherwise. The Commissioner argues that *Mercedez* is not binding authority, but this court finds its reasoning (and that of other district courts) persuasive.

The Commissioner argues that even if the DOT's definition of light work requires frequent pushing and pulling up to ten pounds, that does not mean it requires frequent pushing and pulling *bilaterally*. The Commissioner states that none of the jobs identified by the ALJ here require manual dexterity more than occasionally. The Commissioner argues that manual dexterity means "using both hands in coordination" but cites to no authority for this definition. The DOT does not appear to define manual dexterity. In Department of Labor guidance, manual dexterity is "defined as the ability to move the hands easily and skillfully" and "to work with the hands in placing and turning motions."[37] As the court in *Mercedez* noted, the DOT is silent as to whether its requirements apply bilaterally, which is sufficient to create an "apparent conflict" that

---

2013 WL 3471106, at *3 (D. Me. July 10, 2013) (adopting report and recommendation) (same); *but see **Jimmy D. v. Dudek***, No. 24-cv-00331-KFW, 2025 WL 1135604, at *4-5 (D. Me. Apr. 17, 2025) (finding no conflict between occasional pushing and pulling and the DOT definition of light work, but failing to acknowledge the DOT's definitions on "exerting force").

[36] *Supra* note 35.

[37] **Kimberly P. v. Saul**, No. ED CV 17-2223-SP, 2019 WL 4736975, at *8 (C.D. Cal. Sept. 26, 2019) (citing **U.S. Department of Labor's Revised Handbook for Analyzing Jobs** at 9-28; *see also **Dross-Swart v. Astrue***, 872 F. Supp. 2d 780, 800 (N.D. Ind. 2012) (discussing the DOT's manual dexterity requirement and noting that manual dexterity means "the ability to move hands easily and skillfully").

requires VE testimony to resolve.[38] The Commissioner's argument regarding "manual dexterity" appears unsupported.[39]

I recommend finding that an apparent unresolved conflict existed between the VE's testimony that a person limited to occasional pushing and pulling on the left side could perform light work, and the DOT's definition of light work as requiring the ability to frequently exert force (which includes pushing and pulling) on up to ten pounds. Because neither the ALJ nor VE acknowledged this possible conflict, I recommend remand for the ALJ to elicit a reasonable explanation for the conflict from the VE and to resolve the conflict by determining if the VE's testimony may be relied upon over the DOT given the explanation.

### D. Failure to Develop the Record

A claimant bears the burden of persuasion to prove disability and to demonstrate her RFC.[40] Despite this burden on the claimant, an ALJ must fairly and fully develop

---

[38] *Cf. also* **Pearson v. Colvin**, 810 F.3d 204, 211 (4th Cir. 2015) (recognizing unresolved conflict between DOT requirement of frequent reaching and RFC limiting one of claimant's arms to occasional overhead reaching); **Scott B. v. O'Malley**, No. 23-cv-4036, 2024 WL 4133034, at *13 (N.D. Iowa Sept. 10, 2024) (same), *report and recommendation adopted,* 2024 WL 4308113 (Sept. 25, 2024) (clear error review); **McClure v. Kijakazi**, No. 8:22CV33, 2023 WL 144214, at *2-3 (D. Neb. Jan. 10, 2023) (same and additionally noting "[m]ost courts" have ruled this way).

[39] *Cf. Pearson*, 810 F.3d at 206, 211-12 (Fourth Circuit found apparent conflict between claimant's limitation to occasional overhead reaching with one extremity and DOT's frequent reaching requirements for the cashier II position, one of the positions the ALJ found claimant could perform here (that requires only occasional manual dexterity)).

[40] **Hensley v. Colvin**, 829 F.3d 926, 932 (8th Cir. 2016).

14

the record.[41] To warrant remand, however, the lack of evidence must be "unfair or prejudicial."[42]

First, Plaintiff argues that the ALJ erred in failing to obtain two medical opinions mentioned in the available treatment records. A July 2022 treatment note from Plaintiff's primary care provider, David Archer, MD, reflects that she "is here for an exam," that she is working with an attorney to obtain benefits, and "that the provider asked her to come in to discuss [l]ong term disability forms for Lincoln Financial." AR 480. The "review of systems" section contains a list of functional limitations that appear to be taken from Plaintiff's subjective statements (the list includes things like she "can no longer throw [a 50 pound] bag[] of seed corn" or "ride the 4-wheeler"). AR 482. The doctor's "plan" at the conclusion of the treatment note states he will "provide functional capacity documentation for Lincoln Financial." AR 483. Second, the worker's compensation settlement reflects that "[o]n April 10, 2023, Dr. Conte, Defendant's expert, provided his opinions . . . that Claimant's job activities at [work] did not result in an injury to Claimant's abdomen or ribs," and "her symptoms and complaints were" instead "the result of the prior [motor vehicle accidents] and the failure of her ribs to properly heal." AR 199.

The record does not contain any functional assessment by Dr. Archer for purposes of long-term disability, nor Dr. Conte's worker's compensation opinion. Plaintiff argues that the ALJ erred by failing to develop the record to obtain these opinions. Plaintiff acknowledges that the description of Dr. Conte's opinion makes it seem like it opines as to causation (irrelevant for purposes of the disability determination here), rather than to any functional limitations caused by Plaintiff's impairments.

---

[41] *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *see also* *Cox v. Apfel*, 160 F.3d 1203, 1209 (8th Cir. 1998) (finding the ALJ did not properly develop the record when it clearly lacked relevant medical records).

[42] *Snead*, 360 F.3d at 839 (quoting *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1992)).

The ALJ did not err in failing to obtain these opinions for the record. The ALJ need not obtain additional opinion evidence unless "a critical issue was underdeveloped . . . such that the ALJ's decision was not supported by substantial evidence."[43] The ALJ's RFC determination was supported by the medical opinions in the record. In addition, it seems as if Dr. Archer's opinion might simply list Plaintiff's subjective complaints, while Dr. Conte's opinion may not contain any functional limitations. On remand, however, Plaintiff's counsel is free to submit these opinions for the ALJ to consider.

Plaintiff also argues that the ALJ erred by failing to meaningfully address her breathing issues, sleep apnea, and obesity. After Plaintiff exacerbated her rib injury in January 2021 but before surgery, she denied shortness of breath at two appointments but reported shortness of breath with exertion at a third appointment. AR 349, 383, 395. She underwent rib surgery in late June 2021 and spent several nights in the hospital while she recovered. Hospital providers observed that her oxygen levels dropped when she slept. AR 343. She informed her primary care provider and also reported shortness of breath with exertion. AR 342. Her primary care provider ordered a sleep study, which confirmed severe obstructive sleep apnea that responded well to treatment with a CPAP[44] machine. AR 299-300, 335-36. On the day Plaintiff was prescribed the CPAP machine (in late November 2021), she met with her primary care provider to fill out a disability form, and she reported being unable to walk 200 feet without feeling short of breath. AR 333. At two appointments in February 2022, she reported shortness of breath with exertion, but she denied shortness of breath at three appointments in May and July 2022. AR 419, 435, 457, 470, 486. In the function report she completed for the Social Security Administration in February 2022, she stated that she gets winded easily (causing her to

---

[43] *Kruger v. Colvin*, No. C 13-3036, 2014 WL 2884038, at *2 (N.D. Iowa June 25, 2014).

[44] Continuous Positive Airway Pressure.

walk more slowly and to avoid yard work) and that she still uses the albuterol inhaler prescribed after her surgery on hot days when she is moving around more. AR 231, 233, 236-37. Her functional capacity evaluations in April 2023 do not reflect any issues with shortness of breath, nor did she testify to such symptoms at the hearing in July 2023. AR 32-55, 627, 659.

Plaintiff notes that the state agency consultants included as severe impairments "severe respiratory disorder – sleep-related breathing disorder" and "severe respiratory disorder – other disorders of the respiratory system." AR 68, 76. Thus, Plaintiff suggests the ALJ should have included sleep apnea and a respiratory disorder as severe impairments at step two. But in their narrative section, the state agency consultants recognized two severe impairments: "non-healing rib fracture" and "class II obesity with BMI 36." AR 70, 77. Plaintiff's shortness-of-breath issues related to her rib injury, which the ALJ recognized as a severe impairment.

Plaintiff also argues the ALJ should have discussed functional limitations resulting from her sleep apnea and breathing issues. But the Plaintiff does not argue what additional limitations the ALJ should have imposed. Plaintiff also suggests the ALJ should have ordered a consultative examination. But the ALJ's RFC determination was supported by the two consultative examinations in the record (that Plaintiff obtained in connection with her worker's compensation case) and the state agency medical consultants' opinions. Here, Plaintiff's sleep apnea appears to have been managed with treatment with the CPAP machine. In addition, her reports of sometimes suffering shortness of breath with exertion do not support any additional functional limitations; the ALJ's limitations to light work are sufficient. I do not recommend finding that the ALJ erred in failing to further discuss Plaintiff's complaints of sleep apnea or shortness of breath.

As for obesity, treatment records reflect that in 2021 and 2022, Plaintiff's weight ranged from 203 to 223 pounds (despite self-reporting weighing 180 pounds to both a

17

Case 5:24-cv-04029-CJW-KEM   Document 15   Filed 08/12/25   Page 17 of 19

provider and the Social Security Administration). AR 213, 294, 299, 304, 325, 334, 342, 345, 347, 350, 363, 395, 436, 486-87. Plaintiff was 5 feet, 5 inches tall, rendering her BMI[45] 33 to 37. *Id*. Social Security Ruling (SSR) 19-2p provides guidance to ALJs on how to consider obesity.[46] SSR 19-2p states that obesity should be considered a medically determinable impairment if treatment records from an acceptable medical source reflect "height and weight" or "BMI measurements over time" correlating to a BMI above 30.[47] Obesity should be considered a severe impairment only if it "alone or in combination with [other] impairment[s], significantly limits [the claimant's] physical or mental ability to do basic work activity."[48] Here, the objective medical evidence of Plaintiff's height and weight in the treatment records demonstrates the ALJ should have recognized obesity as a medically determinable impairment, consistent with SSR 19-2p. But the Commissioner argues that because Plaintiff does not point to any additional functional limitations caused by obesity, it is not a severe impairment, and any error was harmless. Prior to the adoption of SSR 19-2p in 2019, the Eighth Circuit had recognized that the ALJ's failure to discuss obesity may amount to harmless error.[49] It is unclear if the court would hold the same today in the face of SSR 19-2p. At least one district court (outside the Eighth Circuit) has held that remand is required when an ALJ fails to discuss obesity as outlined in SSR 19-2p.[50] Thus, although I tend to agree with the Commissioner that the record does not support any greater functional limitations as a result of Plaintiff's

---

[45] Body Mass Index.

[46] **SSR 19-2p**, 84 Fed. Reg. 22924 (May 20, 2019).

[47] *Id.* at 22925.

[48] *Id.*

[49] *Forte v. Barnhart*, 377 F.3d 892, 896-97 (8th Cir. 2004).

[50] *Fernando R. v. O'Malley*, No. 23cv181, 2024 WL 493446, at *6-7 (S.D. Cal. Feb. 8, 2024), *report and recommendation adopted*, 2024 WL 5706885 (Mar. 1, 2024) (clear error review).

obesity, because I am recommending remand to correct a different error, I recommend that on remand, the ALJ address obesity consistent with SSR 19-2p.

### III. CONCLUSION

I recommend **reversing** the Commissioner's decision and remanding for further proceedings.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[51] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[52]

**DATED** August 12, 2025.

*[signature: Kelly K.E. Mahoney]*

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[51] **Fed. R. Civ. P. 72**.

[52] *See United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).